IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JALASCA J. RICHARD, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-10-223-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

The claimant Jalasca Richard requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the decision of the Commissioner is hereby AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423

(d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on November 12, 1958, and was fifty years old at the time of the applicable administrative hearing (Tr. 23, 86). She has a GED, and has worked as a cashier and waitress (Tr. 24, 41). The claimant alleges she has been unable to work since November 23, 2006, due to fibromyalgia, chronic pain, and asthma (Tr. 57, 106).

### Procedural History

On December 20, 2006, the claimant applied for supplemental security income ("SSI") payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ Osly F. Deramus conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated May 12, 2009 (Tr. 11-19). The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform light work, *i. e.*, she could lift ten pounds frequently and twenty pounds occasionally, sit/stand/walk six hours in an eight-hour workday, but climb ramps/stairs, balance, stoop, kneel, crouch, and crawl only occasionally, and never climb ladders, ropes or scaffolds. The ALJ also found that the claimant had limited ability to maintain attention and concentration due to pain. (Tr. 14-15). The ALJ concluded that although the claimant could not return to her past

relevant work, she was nevertheless not disabled because there were jobs that she could perform, *i. e.*, sewing machine operator and ticket taker. (Tr. 17-18).

## Review

The claimant contends that the ALJ erred: (i) by failing to find her spinal problems to be a severe impairment; (ii) by failing to properly assess her RFC; (iii) by failing to find that she was disabled according to "the grids," *i. e.*, by applying the Medical-Vocational Guidelines; and (iv) by failing to properly assess her credibility. All of these contentions lack merit.

The medical evidence reveals that the claimant had the severe impairments of fibromyalgia and asthma. (Tr. 13). As for the relevant medical evidence, one of the claimant's treating physicians, Dr. Stokes, treated the claimant from 2005 to 2007. (Tr. 160-178). Dr. Stokes noted her neck and back pain, and the records indicate the claimant regularly ordered pain medication refills; however, Dr. Stokes noted in March 2006, September 2006, and January 2007 that the claimant was able to work despite her pain. More specifically, he noted in January 2007 that the claimant was stable and could function and hold a job with her current prescriptions, but indicated "wk to 5-6 hrs max," and noted right knee pain. (Tr. 160-164). In April 2007, Dr. Stokes noted that the claimant was no longer working, but was doing "pretty well overall," and that he would need to "play [with] doses" of her pain medication. (Tr. 218).

A state agency physician examined the claimant on February 21, 2007. As to the claimant's extremities, he noted that the claimant had the full range of motion with her hands, normal grip strength and hand function, and the ability to manipulate and grasp

objects.  As to her back, he noted that she appeared to have some pain during 25-degree side bends and extensions, but that she could bend and walk normally.  Additionally, he reported that "[t]he patient says that she has pain whenever she is touched but did not appear to have muscle spasms."  He assessed her with low back and leg pain, and asthma.  (Tr. 208-09).

Dr. George Alhaj, Jr., also treated the claimant for her back and neck pain during 2008 and 2009, and provided steroid injections.  (Tr. 347-390).  His treatment notes indicate that the claimant was consistently positive for 5 of 18 fibromyalgia trigger points (Tr. 347, 351, 356, 359, 363, 367, 373, 378, 384), that the claimant had mild to moderate disc pain and joint tenderness (Tr. 347-385), and that the claimant had a "mildly limited" range of motion in her lumbar spine (Tr. 347).  Dr. Alhaj referred the claimant for an MRI, which revealed "severe disc space narrowing with degenerative endplate changes at C5-6," as well as "a small right paracentral disc bulge at this level which results in moderate right and mild left neural foraminal narrowing."  (Tr. 386).

On December 2008 through January 2009, Dr. Laurel Jordan treated the claimant for pelvic pain and performed an endometrial biopsy.  At both the initial and follow-up examinations, the claimant reported her medical history of fibromyalgia but denied any chronic pain and ranked her pain at 0 out of 10.  (Tr. 315-325).

At the administrative hearing, the claimant testified that she suffers from "head to toe chronic pain," including pain in her neck, shoulders, arms, and legs, and muscle spasms in her hips and legs.  She stated that she had to rotate her pain medication to ensure that it was effective, that she was seeing a doctor for pain management, and that

she was receiving injections for her pain.  (Tr. 26-32).  She also stated that she sometimes experiences numbness in her arms and hands.  (Tr. 35-36).  As for her activities of daily living, she testified that she spends most of her days in bed, that she did not know how far she could walk, and that she could lift five pounds, but that bending and squatting were painful.  Additionally, she stated that her daughter had to help her get in and out of her bath, and with cleaning the house.  (Tr. 37-40).

In his written opinion, the ALJ summarized the claimant's hearing testimony, but noted that the claimant had continued working after the alleged onset date, and had only worked part time prior to the alleged onset date.  He then stated that the issue was "not the existence of pain, but rather the degree of incapacity incurred because of it."  (Tr. 16).  He found that the evidence "failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities," and that the claimant's allegation of disabling pain was therefore not credible.  As to the medical records, the ALJ noted that the claimant had complained of pain, but that the pain had stabilized with prescription medications enough to enable employment in 2006 and 2007; that although she had low back and leg pain, she was able to ambulate without assistance; that the claimant reported problems gripping, but was assessed with normal grip strength and hand functioning; that she reported tenderness at 5-8 fibromyalgia trigger points, but that the pain was under control with pain medication; that she reported no muscle or joint pain in January 2009, and reported that medications alleviated her pain in March 2009.

Regarding the claimant's first contention, the Court finds no reversible error in the ALJ's treatment of the claimant's spinal problems as severe.  A claimant has the burden

at step two of showing an impairment severe enough to interfere with the ability to work. *Bowen v. Yuckert*, 482 U.S. 137 (1987). This determination is "based on medical factors alone, and 'does not include consideration of such vocational factors as age, education, and work experience.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004), *quoting Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). Although "the claimant must show more than the mere presence of a condition or ailment[,]" *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997), the claimant's step-two burden only requires a "de minimis" showing of impairment. *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997), *citing Williams*, 844 F.2d at 751. Thus, a finding of non-severity may be made only when the medical evidence establishes a slight abnormality or a combination of abnormalities that would have no more than a minimal effect on an individual's ability to work. *Hinkle*, 132 F.3d at 1352.

      The evidence here reveals that the claimant was assessed with low back pain and an MRI revealed "severe disc space narrowing with degenerative endplate changes at C5-6," as well as "a small right paracentral disc bulge at this level which results in moderate right and mild left neural foraminal narrowing." The ALJ did not specifically discuss this evidence, but assuming it constituted a *de minimis* showing of impairment under *Yuckert*, the ALJ's failure to find the that claimant's spinal problems were severe does not require reversal because the ALJ *did find* that her fibromyalgia and asthma were severe. *See, e. g., Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step

two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.") [emphasis in original].

If a claimant has any severe impairment, the ALJ must "consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'" *Id.*, *citing* Soc. Sec. Rul. 96-8p. The ALJ in this case was therefore required to consider the effects of the claimant's spinal problems along with her asthma and fibromyalgia in determining her RFC. In her second contention, the claimant asserts that the ALJ failed to account for her spinal impairment in formulating her RFC. But the Court does not agree. In discussing the medical record, the ALJ specifically noted her assessment of low back pain, as well as her general complaints of pain all over her body. He noted that, despite these complaints of pain, she was able to ambulate normally, had full range of motion and grip strength, and that the claimant herself had reported that her pain was under control with medication. (Tr. 16-17). The ALJ thus concluded, "after careful consideration of the entire record, including the claimant's testimony that she experiences pain and the potential side effects from medications . . . that the claimant has the residual functional capacity to perform light work." (Tr. 17). When all the evidence is taken into account, conclusion that the claimant could perform light work is supported by substantial evidence. *See Hill v. Astrue*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine

RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).

The claimant's third contention is that the ALJ should have been found her to be disabled according to "the grids" because her spinal problems demonstrate she is unable to perform light work.  But as discussed above, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform light work.  The third contention is therefore without merit.

Finally, the claimant contends that the ALJ erred in his analysis of her credibility.  A credibility determination is entitled to deference unless the ALJ misreads the medical evidence taken as a whole.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).  An ALJ may disregard a claimant's subjective complaints of pain if unsupported by any clinical findings.  *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987).  But credibility findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted].  An ALJ's credibility analysis "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'"  *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996).

Regarding credibility, the ALJ noted that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible," and that the "evidence of record failed to demonstrate the presence of pathological clinical signs, significant medical findings, or neurological abnormalities which would establish

the existence of a pattern of pain of such severity that would contraindicate claimant's engaging in [SGA]." (Tr. 15-16). He concluded that her "allegation of pain of an extent as to be disabling is neither persuasive nor credible." (Tr. 16). The ALJ mentioned the applicable credibility factors and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not credible. For example, the ALJ mentioned that: (i) despite complaints of severe pain, the claimant reported relief from pain with pain management; (ii) although not disqualifying SGA, the claimant's history reflected work activity after the alleged onset date; (iii) although assessed with low back pain, she was able to ambulate normally when examined; (iv) although the claimant reported problems gripping and manipulating, she had full range of motion and grip strength when tested; (v) she had 5-8 out of 18 fibromyalgia trigger points; (vi) the claimant reported that her pain was alleviated by steroid injections. (Tr. 15-17). The ALJ thus linked his credibility determination to evidence as required by *Kepler*, and provided specific reasons for his determination in accordance with *Hardman*. There is no indication here that the ALJ misread the claimant's medical evidence taken as a whole, and his determination of her credibility is therefore entitled to deference. *See Casias*, 933 F.2d at 801.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The Commissioner's decision is therefore AFFIRMED.

**DATED** this 20th day of September, 2011.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma